CASE 68—PETITION EQUITY—APRIL 28.

## Weiser, Etc. v. Muir, Etc.

APPEAL FROM JESSAMINE CIRCUIT COURT.

1. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS—ASSIGNMENTS —PREFERENCE OF TRUST DEBTS.—The provision of sec. 74 of the Kentucky Statutes that "debts due by an assignor, as guardian, committee, trustee of an express trust created by deed or will, or as personal representative, shall be paid in full before the general creditors receive anything," does not impair the obligations of contracts existing at the time of its enactment; a trust fund has always been regarded the property of the *cestui que* trust in the hands of the fiduciary, and the courts have always been authorized to prevent a misappropriation thereof, and the statute is merely a re-affirmation of the law as it has long existed.

MORTON & DARNALL FOR APPELLANT.

1. The act of 1894, in so far as it undertook to change the order of distribution of assigned estates, and directed that certain debts should first be paid before the general creditors could participate

in the insolvent's estate, impaired the obligation of then existing contracts held by general creditors and is in contravention of both the State and Federal Constitutions. Federal Constitution, sec. 10, art. 1; State Constitution, sec. 19, (Bill of Rights); Green v. Biddle, 8 Wheaton, 92; United States v. Quincy, 4 Wallace, 535; Edwards v. Kearzey, 6 Otto, 595; Blair v. Williams, 4 Littell, 34; Lapsley v. Brashears, 4 Littell, 47; Collins v. Collins, 79 Ky.; Stephen's Admr. v. Barnett, 7 Dana, 266; Grider v. Payne, 9 Dana, 192; Slack v. Maysville & Lex. R. R. Co., 13 B. M., 19; Watts v. Commonwealth, 78 Ky., 329.

GEORGE R. PRYOR ON SAME SIDE.

1. No statute will ever be construed to be retrospective unless expressly so declared, or such interpretation be inevitable. Ky. Statutes, sec. 459; O'Donahue v. Aiken, 2 Duvall, 480; C. & O. R. R. Co. v. Washington County Court, 10 Bush, 574; Slack v. Maysville & Lexington R. R. Co., 13 B. M., 19; L. & N. R. R. Co. v. Sharp, 91 Ky., 413; Cooley's Constitutional Limitations, page 370.
2. The act in question, if it is retrospective in its operation, impairs the obligation of contracts of then existing creditors. Collins v. Collins, 79 Ky., 92; Blair v. Williams, 4 Littell, 46; Lapsley v. Brashears, 4 Littell, 57; Berry & Johnson v. Randall, 4 Met., 294; Smith on Constitutional and Statutory Construction, page 388.

H. MARSHALL BUFORD FOR APPELLEES.

1. So long as the relation existing between the obligor and obligee is not disturbed by an act of the legislature, the act is not in contravention of the Constitutional prohibition against the impairment of the obligation of contracts; the statute in question is simply an exercise by the legislature of the discretion given to it by the Constitution to direct in what manner the estate of an insolvent shall be distributed, and what class of debts shall be preferred. Ky. Statutes, sec. 74; General Statutes, chap. 39, art. 2, sec. 33; Stanton's Revised Statutes, vol. 1, page 556; Morehead & Brown's Statutes, vol. 1, page 220; Stephen's Admr. v. Barnett, 7 Dana, 265; Grider v. Payne, 9 Dana, 192; Rowland's Admr. v. Cook's Admr., 2 J. J. M., 73.

NATHAN D. MILES ON SAME SIDE.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It appears from this record that Samuel Muir, Sr. died in Jessamine County, Kentucky, in 1885, leaving a will by which he made his son E. B. Muir his executor and the residue of his personal estate he gave to his said executor and his three sons, the appellees therein. The portions going to the appellees, who were the sons of the executor, were to be paid over to them as they each respectively became of age. The executor became indebted to the appellants for borrowed money some years prior to the year 1894, and on October 18, 1894, he made a deed of voluntary assignment to W. L. Steele for the benefit of his creditors.

On the 30th of January, 1895, the said assignee instituted suit in the Jessamine Circuit Court for a settlement of the estate so assigned, in which it seems the appellants and appellees were made parties. The appellees, H. C., S. B. & E. B. Muir, Jr. answered and made their answer a cross-petition against the assignee, asserting a claim for something more than twenty-six thousand dollars due them from the assignor by virtue and under the provisions of the will aforesaid, and insisting that their claim was prior and paramount to the claims of the other creditors of the said assignor. The claim so asserted by the appellees was contested by the appellants. The court below, upon final hearing, rendered a judgment sustaining the contention of appellees, and from that judgment this appeal is prosecuted.

The latter clause of section 74, chapter 7, Kentucky Statutes, reads as follows: "Except that debts due by an

assignor as guardian, committee, trustee of an express trust created by deed or will, or as personal representative shall be paid in full before the general creditors receive anything."

It seems to be admitted that the debts of the appellants were created before the enactment of the section supra, but that an assignment was made several months after the enactment of the statute in question. It seems to be the contention of the appellants that the judgment appealed from was rendered in obedience and on account of the provisions of the section supra; and the constitutionality of the law as to debts existing prior thereto seems to be the principal, if not the sole question presented for consideration. Numerous authorities are cited by the appellants in support of their contention, all of which we have examined with care, and it may be conceded that they sustain the proposition that no law is constitutional which impairs the obligation of a contract, and it may be further admitted, and conceded that an act which materially obstructs, or postpones the remedy in a contract is also in violation of the State Constitution, and the Federal Constitution as well.

It is one of the contentions of the appellees that no law impairs the obligation of a contract unless it undertakes to relieve the obligor from some obligation theretofore resting on him, or changes the rights or postpones or obstructs the remedies of the obligee; and it is their contention that the statute referred to does not do either of these things. It is further contended that it was within the power of the State at all times to determine what debts

or obligations shall be preferred, and to regulate the distribution of insolvent estates.

It is true that if the assignment had been made prior to the adoption of the statute under consideration, without any preference provided for appellees would not have been entitled to the preference adjudged herein, but it is also equally clear that the creditors had no contract by which they could require the assignor to make any assignment; nor did he, even by implication, undertake in any contingency to make any assignment for the benefit of his creditors; hence it follows that the law providing for an assignment could in no wise impair the obligations of contracts then in existence, and we are unable to see that the enactment of the statute providing for the preference given could in any sense violate the obligations in the contract. As before said, there was no law requiring the assignor in any event to make an assignment, nor any right given to any creditor to compel him to make an assignment, nor does the present law require him to make an assignment.

Prior to the act of 1894, of chapter 7, of the Kentucky Statutes there was no statute regulating the manner of the distribution of the funds arising from the property assigned in such case, but the same was distributed as directed by the deed of assignment, and if no directions were given in the deed, the fund was distributed pro rata among the creditors when the assets were not sufficient to pay each creditor in full.

The case of Stevens' Admr. v. Burdett, 7th Dana, 266, seems to be in point, and is relied on by the appellees. It seems in that case that by an act of the General Assembly

debts due the Bank of the Commonwealth were given a preference over the claims of other creditors, and the court in discussing that question said:

"But in relation to the notes of the intestate owing at his death to the Bank of the Commonwealth, they by the statute were made debts of a superior dignity, and it was the duty of the administrator to pay them first. (Statute Law 220.) And though this statute was enacted after the replevin bond sued on, we do not regard it as impairing the obligation of the contract. It was passed before the death of the intestate, and at the time of its enactment the judgment creditor had no specific lien on the debtor's property of higher obligation than other creditors by note or simple contract had or might have acquired. And no preference was then due to him over the claims of other creditors then existing, or which might be afterwards created. And they might, without infringing any of his rights, have reduced their simple contracts to judgment and coerced their collection first. And the legislature might have at any time in the lifetime of the obligor, or judgment debtor raised notes or accounts to the dignity of judgments, or even placed them above them in the course of administration, as we conceive, without an infraction of any known legal obligation secured by the constitution to the judgment creditor. It would certainly be competent for the legislature, before the death of the debtor, to place all debts upon an equality in the course of administration. And, if so, we can perceive no good reason why they might not in the lifetime of the debtor give a superior dignity

or preference to debts in the course of administration
after his death."

The opinion in the case of Rowland's Admr. v. Cocke's
Admr., 2 J. J. Mar., 79, seems to announce the same prin-
ciple announced in the case supra.  This court in the case
of Grider, etc. v. Payne, 9 Dana, 193, recognized the validity
of the statute under consideration in the case of Stevens'
Admrs. v. Burdett above   quoted.

It appears from the petition in this case that the assig-
nor in the deed of assignment provided that if there should
not be enough to pay all of his indebtedness then the assig-
nor should pay them pro rata, except in cases in which the
law might give preference or privileges to certain debts,
etc.   And as the assignment was made after the enact-
ment of the law providing for preferences, it seems to us
that the expression quoted is equivalent to a direct pro-
vision in the deed of assignment giving the appellees the
very preference adjudged to them by the court.   The deed
of assignment itself does not appear to be copied into this
record, but the averments respecting the same made in
the petition seem to be taken as true.

A trust fund in the hands of a fiduciary is not the individ-
ual property of the fiduciary, but is always the property of
the cestui que trust, and it has always been the object
of the law to protect and guard the same, and the courts
have always been authorized to prevent a misappropriation
of the fund.   If the fiduciary attempts to appropriate the
fund to his own use, the courts have always been author-
ized to interpose, and prevent such misappropriation.   If
the trustee converts the trust fund to his own use and in-

vests it in property in his own name, the courts have
always been authorized to seize and appropriate such pro-
perty to the use or benefit of the cestui que trust in all
cases in which the trust fund can be traced to the property
in which it is invested.   The preference given to the cestui
que trust in the distribution of insolvent estates rests,
in part at least, upon the theory that the trust fund is still
in the hands of the trustee or fiduciary, and that it is not
his property but that of the cestui que trust, the assump-
tion being that he always has such funds in his hands, un-
less he has paid it out to the cestui que trust.

. If the assignor in this case had so elected he could have
paid over to the cestui que trust the sum due them, or
conveyed to them his property in payment of the sum due,
and the same would not have been in violation of any law,
or at most would have been only subject to attack under
provisions of the act of 1856, in which event such payment
or transfer might have been held to operate as an assign-
ment of all his property for the benefit of his creditors,
and in that event, under the provisions of the law in force
since 1856, the claims of the appellees would have been
adjudged a prior claim, the same as has been adjudged by
the court below.   If the assignor had attempted to convey
his property to the appellants in discharge of their debts,
or had in fact paid them in full with the view of prefer-
ring them and in contemplation of insolvency, the appel-
lees could have attacked the same and the transaction
would have been adjudged to have operated as an assign-
ment for the benefit of his creditors, and under the statute
in force long prior to the creation of appellants' debts

these appellees would have been entitled to the same pre-ference that they have obtained under the judgment appealed from.

It seems manifest that the act of 1894, section 74, which is complained of by appellants, has in no wise affected the contract rights or remedies of the appellants. In fact the act complained of is but another means of enforcing or reaffirming the law as it has long existed and preventing the misappropriation of trust funds.

The appellants, from the time their debts fell due, had the right to sue, and obtain judgment against the assignor, levy and sell any property in his hands subject to execution. They have that right yet, not at all impaired by the act of 1894, and we are clearly of the opinion that the judgment of the court below was not only in accordance with the act of 1894, but also in accordance with the law of this State existing long before the creation of appellant's debts.

For the reasons given the judgment appealed from is affirmed.